## Moorehead *against* West Branch Bank.

If a debtor give to a creditor a draft for money and direct the application of the proceeds to a particular liability, the creditor is bound to apply it to that liability as much as if the debtor had paid the same amount in cash with the same direction.

Whether the debtor in making a payment to his creditor intended to apply it to one debt or another, is a matter of fact which must be ascertained by the jury from all the circumstances of the case and conduct of the parties.

ERROR to the Special Court of Common Pleas of *Columbia* county.

This was an action on the case by the West Branch Bank against Thomas Moorehead, founded upon his endorsement of a note of Daniel Musselman. The defendant pleaded payment. Daniel Musselman had two notes in bank, one endorsed by William Donaldson, which fell due on the 29th of April, and another endorsed by Thomas Moorehead, which fell due on the 4th of May, upon which this suit was brought. On the 23d of April, Musselman having an accepted draft of Herr of Baltimore for $1000, called at the bank, and had a conversation with the cashier, who testified as follows:

"The draft was discounted 23d of April. It was discount-day. Musselman called on that day and offered that draft for discount with some other paper. I told him there was no prospect of his getting it discounted; that the bank would not allow any money to increase his liabilities. He had had two notes of $800 each for some time. These notes had been renewed. Musselman said he only owned one of them. He said one of them belonged to Donaldson. He showed me the acceptance of Herr. I told him the bank would not discount it, unless it was to pay previous liabilities. I told the old man he had better lift all his notes, and then he would have a fair chance before the board for further accommodation. He complained of the bank for not giving the accommodation. He got in a great passion—said he would go home, and all his debts should be paid in a few days, and he would have nothing more to do with them. I told him if the draft was discounted, it would go to his credit, and that the first note due would be charged to his account. I asked him which note would become due first; he said the one endorsed by Thomas Moorehead. I took the bill or draft and desired him to remain there. He started two or three times to go out. I took the draft in to the board, and stated to them what conversation I had had with Musselman upon the subject. The board discounted the bill for the

[Moorehead v. West Branch Bank.]

purpose of applying it to his liabilities in bank. I came out from the board of directors, and he was gone. His account was charged with the note of $800, 25th of April 1839, which was endorsed by Donaldson. He was advised of the proceeds of the draft. I advised the parties, on the evening of the day of discounting the proceeds, but do not know that I advised him of charging Donaldson's note. I told him that the proceeds of the draft would be applied to the note that first became due. I told him the draft could be discounted on no other terms than that its proceeds should be applied to present liabilities. I informed the board that two notes would be due in a few days by Musselman. Musselman gave no positive directions about the application of the proceeds of Herr's draft. I told him the bank would not increase his liabilities,*and they would discount the draft and charge him with the first note that became due. The second note would be protested unless he had funds enough there to pay it.

Judge Donaldson was not there at this time. He was one of the directors of that year. I do not recollect who was there. I told the board Musselman had brought the bill on, and I told him that it would not be done, only to be applied to his credit on the liabilities. I knew there were two notes that soon would become due. I do not know that I made any observation to the board as to which note it was to be applied. Musselman said that one was Donaldson's own note. He said he would go and make Donaldson pay up. He said, 'all my liabilities shall be paid before they become due.' I urged him to remain till after the board rose. Musselman said Moorehead's note first became due. He said nothing about the application of the money, but they should all be settled before they became due. He would go to Danville and see Donaldson. There was nothing more said about the application of the proceeds — nothing more said upon the subject. Musselman did not tell me to pay off the Moorehead note. I told him the draft would be placed to his credit, and he be charged with the first note that became due. I asked him which would be due first, and he said Moorehead's note. I did not inform him that the note of Moorehead would not be due first. He said he would go home and raise the money to pay off the balance before they became due. He seemed very much displeased at Donaldson. He said Donaldson got the use of that note. I suppose he meant to make Donaldson pay this note. This is the check I referred to, dated June 1st, 1839, payable to self or bearer, and to be sent by mail. The money was drawn out in my absence. It was endorsed by Judge Donaldson to the teller."

William Donaldson, the endorser of the note spoken of, was then called: and by him the defendant offered to prove that the note of the 25th of January 1839, was given in renewal of a note drawn by Musselman for the accommodation of Donaldson, and was endorsed by Donaldson; for the purpose of showing a motive

[Moorehead v. West Branch Bank.]

in Musselman in applying the proceeds of the Herr draft to the payment of the Moorehead note, and in explanation of his conduct. To this the plaintiff objected : 1st. Because the bank, the owner of the notes, could not have their rights affected by any acts to invalidate the instrument by the endorser. 2d. The bank were not to be affected by private transactions with Musselman. That it was irrelevant, and could not affect the rights of the bank. The court sustained the objection and rejected the evidence.

The court below strongly inclined to the opinion that the bank had the right to make the application of the proceeds of the Herr draft to the payment of the note of Musselman, endorsed by Donaldson; and so instructed the jury.

*Comly* and *Frick,* for plaintiff in error, argued that it was perfectly manifest from the testimony of the cashier that it was the intention of Musselman to apply the proceeds of the draft to the note now in suit; first, because it was his own debt, and again, because he believed it was the first due. This desire he distinctly communicated to the cashier; and if the bank intended to make any other disposition of it, acting in good faith, they should have informed Musselman of it. The witness offered was clearly competent ; he was not a party to the note in suit.

*Pleasants* and *Cooper, contra.* Musselman did not direct any other application of the proceeds of the draft than to the note first due; and that direction was pursued by the officer of the bank. Musselman and Donaldson join in making a note in which Musselman is the drawer and Donaldson the endorser, for the purpose of raising money for Donaldson, and thus imposing upon the bank ; and now Musselman offers to prove that he was not really the payer of that note, but a mere surety, and this for the purpose of making the impression that he did not intend to pay this note. By the form of the note he tells the bank he is the drawer, but when the bank apply his funds to pay it, he is but the surety.

The opinion of the Court was delivered by

Huston, J.—T. Moorehead was sued as the endorser of D. Musselman. Musselman had in bank two notes of $800; one endorsed by W. Donaldson, dated 25th of January 1839, payable at 90 days ; another dated 29th January 1839, also payable at 90 days, endorsed by the defendant. (Here the learned judge states the substance of the cashier's testimony). There was also given in evidence a letter from the cashier to Musselman, dated 29th of January 1839, informing him that the note endorsed by Moorehead must be paid when due.

The defendant called William Johnson, Esq., who said, " after this note was protested, I was in bank, and observed to the cashier that Moorehead was very much displeased at the way he had been

treated about that draft. Mr. Corryell, the cashier, said he had no doubt but that Musselman intended the draft to be applied to pay the Moorehead note, but Musselman had another note in bank, and they examined and found that note was first due, and the draft was appropriated to pay that other note."

The defendant offered W. Donaldson to prove that the note of 25th of January was given in renewal of a former note drawn by Musselman for the accommodation of Donaldson, and endorsed by Donaldson, for the purpose of showing a motive in Musselman in applying the proceeds of the draft to the Moorehead note, and in explanation and support of his conduct. This was rejected, because the bank could not be affected by any acts or declarations of the endorser to invalidate the note he endorsed; and because the bank was not to be affected by the private transactions of Musselman, and because it was irrelevant.

In the hurry of a trial, it seems to have been misunderstood by the court. Donaldson was not offered to affect the note endorsed by himself, and his having endorsed one note was no reason why he should not give evidence respecting another, on which he was not endorser. I do not know that it was very material, but it might be of some effect, to prove that what Mus-selman told the cashier of Donaldson's being bound to discharge one note, was true. It explained the conduct and declarations of Musselman, and might be a strong reason for his wishing the Moorehead note to be paid by the proceeds of the draft; and if in any way Musselman believed Donaldson was bound to discharge the note on which he was endorser, and Musselman told the bank so, how could they suppose that Musselman intended himself to discharge the note which he repeatedly said he would compel Donaldson to pay? If, then, the fact was that Donaldson had pro-mised, or was in any way bound to meet the payment of the note on which he was endorser, it ought to have been permitted to go to the jury. Proof of this kind, in this case, would in no way affect the liability of the parties to the bank in a suit on the Don-aldson note. That will stand on evidence given in that suit, if ever there is a suit on that note. The proof offered here is in a suit on the Moorehead note, and is adduced to show how a sum of money in the bank was to be applied.

The counsel of each party submitted to the court points to be answered, and, as is too common, subdivided them so as to answer any other purpose than that intended by the law which intro-duced this practice.

There was but one question to be decided by the jury. Is it fairly to be collected from the testimony that Musselman intended, and expressed his intention in a way not easily misunderstood, that the proceeds of the Herr draft should be applied to discharge the note on which Moorehead was endorser? The court said correctly that Musselman had a right to direct the application. If a man

[Moorehead v. The West Branch Bank.]

gives to his creditor a draft for money, and directs that money, if received, to be applied to discharge a particular liability, the creditor is bound to apply it to that particular liability, as much as if the debtor had paid the amount of the draft in cash with the same directions. The answer to the sixth point of plaintiff was not, therefore, correct.

The court seem to have been of opinion that nothing short of naming the Moorehead note, and saying, " apply the proceeds to it," will avail; and the court further assume that the Board discounted the draft on the express condition that the proceeds would be applied to the note first due; and also that the Board without seeing or hearing Musselman, might make an arrangement different from that made between their cashier and him, and bind Musselman by it, though he never heard of it. I shall not dwell on the effect of testimony which may be different on the next trial. The cashier had the notes; he could, by a moment's looking at a book, know certainly which would be due first. Musselman tells him, and he communicates, as he says, to the bank, that Musselman was angry that the draft before the Board was to be applied to discharge his liabilities; that Musselman believed the Moorehead note would be due first, and had repeatedly said Donaldson was bound to pay the other, and he would make him pay it. The jury must judge whether this was a direction as to how the proceeds of Herr's draft was to be applied—and such direction as in sense and reason could not be misunderstood. When the Board rose, and the cashier informed Musselman his draft was discounted, were not he and the bank bound to inform him, if they intended to apply the proceeds in a way contrary to his direction and understanding? He said more than once the Moorehead note would fall due first. The cashier does not correct his mistake, but says the draft will be applied to pay the note first due. Musselman's direction must govern. What was its fair, plain meaning?

Judgment reversed, and *venire de novo* awarded.